UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

GERALD M. TYLER & DALE K. LUECK,    Civ. No. 10-1161 (JNE/LIB)

        Plaintiffs,

v.    **REPORT AND RECOMMENDATION**

SECRETARY INTERIOR KEN SALAZAR
IN HIS OFFICIAL CAPACITY AS SECRETARY
OF THE INTERIOR, U.S. FISH AND WILDLIFE
SERVICE & ROWAN GOULD IN HIS OFFICIAL
CAPACITY AS ACTING DIRECTOR, U.S. FISH
AND WILDLIFE SERVICE,

        Defendants.

---

      This matter came before the undersigned United States Magistrate Judge upon the Plaintiffs' Motion for Attorneys' Fees and Plaintiffs' Motion to Supplement the Record. The case has been referred to the undersigned Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). A hearing on the motions was conducted on April 26, 2012. For reasons outlined below, the Court recommends that Plaintiffs' Motions be DENIED.

**I.    BACKGROUND**

      In their Complaint, Plaintiffs sought to have the Defendants (collectively Fish and Wildlife Service ("FWS")) compelled to remove the protections of the Endangered Species Act ("ESA") from the gray wolf in Minnesota. Pursuant to Stipulation, the Court issued an Order to stay the case pending completion of the agency's own contemporaneous rule making process to determine whether the gray wolf should be removed from the protections of the ESA. (Docket No. 101). In late December 2011, the FWS issued a final rule removing the gray wolves in the Upper Midwest, including those in Minnesota, from the ESA's list of threatened and endangered

species. See Final Rule Revising the Listing of the Gray Wolf (Canis lupus) in the Western Great Lakes, 76 Fed. Reg. 81,666 (Dec. 28, 2011)(Docket No. 110). Thereafter, the Plaintiffs voluntarily dismissed their claims in the present lawsuit on February 10, 2012. (Docket No. 127).

The recent delisting of the gray wolf under the ESA has a long and sometimes tortuous history.

The gray wolf was first listed under the ESA as endangered in May 1974. See 76 Fed. Reg. at 81,666. In 1978, the FWS reclassified the gray wolf in Minnesota from endangered to threatened. Id.

In 2000, the FWS received petitions from citizens requesting that the gray wolves be delisted in Minnesota, Wisconsin, and Michigan. Id. at 81,667. The FWS would eventually issue a Final Rule to Reclassify and Remove the Gray Wolf from the List of Endangered and Threatened Wildlife in Portion of the coterminous United States. 68 Fed. Reg. 15,804 (April 1, 2003). The rule revised the listing status of the gray wolf in various regions. Id. The rule created three distinct population segments (DPS) for the gray wolf. Id. The rule reclassified the Eastern DPS of gray wolf which were previously listed as endangered to threatened. Id. However, subsequent court rulings in Oregon and Vermont invalidated the 2003 rule and the gray wolves everywhere reverted to endangered status under the ESA. 76 Fed. Reg. at 81,666. On March 27, 2006, the FWS published a proposal to identify a Western Great Lakes ("WGL") DPS of the gray wolf and remove it from protections under the ESA. Id. The rule also proposed to remove the designated critical habitat for the gray wolf in Minnesota and Michigan, as well as ,remove special regulations for the gray wolf in Minnesota. Id. On February 8, 2007, the FWS issued a rule delisting the WGL DPS of the gray wolf. Id. at 81,667. However, a number of parties

challenged the rule after it became effective. Id. On September 29, 2008, a court struck down the rule and remanded it to the FWS for further proceedings. See Humane Society of the United States v. Kempthorne, 579 F.Supp.2d 7 (D. D.C. 2008). On December 11, 2008, the FWS published a notice reinstating ESA protection for the gray wolf in the WGL. 76 Fed. Reg. at 81,667. On April 2, 2009, the FWS published a new rule again identifying the WGL population of gray wolves as a DPS and removing that population from the list of Endangered and Threatened Wildlife. Id. On June 15, 2009, five parties challenged the new rule as violating the Administrative Procedure Act. Id. Pursuant to a settlement agreement between the parties, the Court issued an Order vacating the 2009 rule and remanding the issue back to the FWS for further consideration on July 2, 2009. Id. The settlement agreement required the FWS to provide a 60 day public comment period for any new rulemaking relating to the WGL DPS gray wolves' status under the ESA. Humane Soc'y v. Salazar, 09-cv-1092, ECF No. 27 (D. D.C.).

According to the Declaration of Laura Ragan, Regional Endangered Species Listing Coordinator for the Midwest Region, following Humane Soc'y v. Salazar in 2009, the FWS quickly began working on a new rule to delist the WGL DPS gray wolf population. (Ragan Decl., at ¶ 8). This Declaration further states that by mid-September 2009, the regional office of the FWS had submitted a new draft rule to the Washington Office for review, but work on the draft was temporarily halted to allow biologists time to review available new science on wolf taxonomy to be included in the new rule. Id.

On March 15, 2010, the Minnesota Department of Natural Resources submitted a petition requesting that the gray wolf in Minnesota be removed from the List of Endangered or Threatened Wildlife under the ESA. 76 Fed. Reg. at 81,667. On April 26, 2010, the Wisconsin Department of Natural Resources and the Sportsmen's Alliance also submitted a petition

requesting that the gray wolf in Minnesota and Wisconsin be delisted.  Id.  On June 17, 2010, Safari Club International, Safari Club International Foundation, and the National Rifle Association of America submitted a petition requesting the WGL DPS of gray wolves be delisted.  Id.

The FWS published a 90-day finding under the ESA determining that the foregoing petitions presented substantial information that delisting may be warranted and initiated a full review of the status of the delisting of the gray wolves in the WGL.  Id.  On May 5, 2011, the FWS initiated a proposal to revise the List of Endangered and Threatened Wildlife for the delisting of the gray wolves in the WGL.  Id.  Additionally, the FWS reopened the public comment period on the proposed rule that was scheduled to end on July 5, 2011.  Id. at 81,680.  Thereafter, on December 28, 2011, the FWS issued a final rule to remove the WGL DPS gray wolf from the ESA's list of threatened and endangered species in the Upper Midwest with an effective date of January 27, 2012.  76 Fed. Reg. at 81,666.

Plaintiffs filed the Complaint in this action in April 2010.  (Compl. [Docket No. 1]).[1] Defendants thereafter filed a motion to dismiss (Docket No. 6), and Plaintiffs filed a motion for default (Docket No. 56) as well as a Motion for Summary Judgment (Docket No. 25).  These motions were never decided by the Court.  However, the parties entered into a stipulation to stay the case on January 14, 2011, and it was stayed until January 2012.  (Docket Nos. 99, 101, 105).  During the stay, two status conferences were held in June 2011 and January 2012.

On January 11, 2012, while this case then remained stayed, the Plaintiffs filed a motion seeking reimbursement for attorneys' fees and costs pursuant to 28 U.S.C. § 2412, the Equal Access to Justice Act ("EAJA"). Plaintiffs subsequently voluntarily dismissed their claims

---

[1] Plaintiffs contend that on January 25, 2010, they provided the Defendants with a 60 day Notice of Intent to Sue. (Pls' Reply, Ex. 1).

through a joint stipulation of dismissal (Docket No. 127), but they still seek now to recover attorneys' fees and costs under the EAJA and the ESA. Plaintiffs seek not only attorneys' fees for their own, individual work, but they also seek attorneys' fees for the work of William Campbell, an attorney who never appeared as of record in this case[2].

## II. EQUAL ACCESS TO JUSTICE ACT[3]

### A. STANDARD OF REVIEW

The EAJA, 28 U.S.C. § 2412(d)(1)(A), states that

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

A "prevailing party" is one who obtains "a judicially sanctioned material alteration of the legal relationship of the parties to the lawsuit." N. Cheyenne Tribe v. Jackson, 433 F.3d 1083, 1085 (8th Cir. 2006) (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604-05 (2001)). To qualify as a prevailing party after Buckhannon, a litigant must have obtained a judgment on the merits, a court-ordered consent decree, or some other court-ordered action that effected a change in the legal relationship between the parties. Buckhannon Bd. & Care Home, Inc., 532 U.S. at 600, 604.

---

[2] Plaintiffs also claim Mr. Campbell acted as a consultant in this case.
[3] As a threshold matter, the Defendants' briefly argue that the Court lacks subject matter jurisdiction over this case and therefore attorneys' fees are not available. However, the Defendants do not independently brief the issue and instead rely on their previous motion to dismiss and supporting briefing found at Docket No. 8. Because the Court believes the Plaintiff's motion should be denied on other grounds, it declines to address the merits of the Defendants' subject matter jurisdiction argument which would essentially require the Court to make a belated determination on the merits of this now voluntarily dismissed case.

Prior to Buckhannon, some courts interpreted the language "prevailing party" to allow parties to obtain attorneys fees under a "catalyst theory." Buckhannon rejected that theory for awarding attorneys fees under the Fair Housing Amendments Act (FHAA) and the Americans with Disabilities Act (ADA). Those statutes, like the EAJA, award attorneys fees to a "prevailing party." While the Eighth Circuit has not expressly held that attorneys fees cannot be recovered under a catalyst theory under the EAJA, it has extended Buckhannon's holding to other statutes with the "prevailing party" language beyond the ADA and FHAA. Advantage Media, L.L.C. v. City of Hopkins, Minn., 511 F.3d 833, 836-38 (8th Cir. 2008) (applying Buckhannon to recovery of attorney's fees under 42 U.S.C. § 1988); Sierra Club v. City of Little Rock, 351 F.3d 840, 845 (8th Cir. 2003) (applying Buckhannon to Clean Water Act's attorney-fee provision, 33 U.S.C. § 1365(d)).[4] Thus, the catalyst theory is not available for obtaining attorneys fees under the EAJA in the Eighth Circuit. See Beza v. Dep't of Homeland Sec., 2009 WL 385754 (E.D. Ark. 2009)(applying Buckhannon prevailing party analysis and rejecting use of catalyst theory on motion for attorneys fees under the EAJA); Loudner v. United States, 379 F.Supp.2d 1048 (D. S.D. 2005)(same).

**B.    DISCUSSION**

Plaintiffs maintain that they were the prevailing parties in this litigation because they were the catalysts who obtained the delisting of the gray wolves in Minnesota. (Pls' Reply Mem., p. 6-7). Moreover, Plaintiffs claim that they were the prevailing party because at the January 2012 status conference, Magistrate Judge Brisbois told the Plaintiffs that "you were successful." (Pls' Reply Mem., p. 15). Plaintiffs also characterize the Court's prior orders staying the case to be orders directing the FWS to complete the delisting by the end of 2011.

---

[4] Even if recovery were available under a catalyst theory, here as discussed more fully in section III below, the Plaintiffs' lawsuit did not act as a catalyst in compelling the FWS to delist the WGL DPS gray wolf.

6

(Pls' Reply Mem., p. 15) (stating that "[i]t is curious to note that not once did [Defendants] mention in the published Proposed Rule . . . nor in the published Final Rule . . . that they were responding to an Order of Judge Brisbois to complete the delisting by year end, 2011").[5]

Here, it is clear that the Plaintiffs were not a "prevailing party." In this case, the parties filed a stipulation of voluntary dismissal (Docket No. 127) agreeing that the case was moot pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). While courts have considered a prevailing party to include parties who succeed by means other than through trial or a dispositive motion, the principle has not been extended to the situation presented here – namely to a party who voluntarily dismisses a case that has been mooted by independent agency action while the lawsuit was pending. For instance, the Eighth Circuit has applied Buckhannon to allow attorneys fees to various situations such as a judgment on the merits, a court-ordered consent decree obtained through settlement which governed a prison's future operation for twelve years, Cody v. Hilldard, 304 F.3d 767, 773 (8th Cir. 2002), and preliminary injunctions which "alter[] the course of a pending administrative proceeding and the party's claim [for a] permanent injunction is rendered moot by the impact of a preliminary injunction." N. Cheyenne Tribe v. Jackson, 433 at 1086. On the other hand, the Eighth Circuit has repeatedly refused to consider a "prevailing party" to include a party whose actions did not change the parties' legal relationship by either affecting the party's behavior to each other or changing the status quo in some way. Sierra Club,

---

[5] The Plaintiffs reliance on statements attributed to undersigned as evidence that they were the prevailing party or the catalyst behind the Defendants' decision to delist the gray wolves is misplaced because the Plaintiffs have misconstrued this Court's statements. The stay put in place by the undersigned was put in place in conformance with the parties' stipulation, and the Order in no way granted the relief Plaintiffs seek nor did it compel the Defendants to affirmatively delist gray wolves. (Docket Nos. 99, 101, 105). Defendants were already undertaking that delisting process on their own. The 2011 timeline put in place by Magistrate Judge Brisbois was not a deadline by which the Defendants had to complete their work nor a court order that the delisting had to be completed by that day, but rather simply a timeline for the Court to revisit the stay conforming to the Defendants representations that they would likely complete the rule by then. Moreover, any suggestion by the Plaintiffs that the undersigned in any way informed them that they had succeeded in their lawsuit is inaccurate. The Court has reviewed the digital record from its status conference in January 2012, and it can find no specific finding or definite statement made by the undersigned that the Plaintiffs "prevailed" in their lawsuit or that the Defendants were "caused to" undertake to delist the wolves because of the Plaintiffs' lawsuit.

351 F.3d at 845 finding that even though plaintiff obtained a declaratory judgment that the defendant violated a permit, the plaintiff was not a prevailing party because the relief it obtained did not affect the defendant's behavior to the plaintiff); Advantage Media, LLC v. City of Hopkins, 511 F.3d 833, 838 (8th Cir. 2008)(determining that even though a preliminary injunction was obtained by plaintiff, the plaintiff was not a prevailing party because it did not materially alter the relationship between the parties); N. Cheyenne Tribe, 433 F.3d at 1086 (concluding that the plaintiff was not the prevailing party where the court "granted only interim relief that preserved the status quo until it could resolve the merits of the [plaintiffs'] claims.") Moreover, in Christina A. ex rel. Jennifer A. v. Bloomberg, 315 F.3d 990 (8th Cir. 2003), the district court approved a class-action settlement, dismissed the action without prejudice, and retained jurisdiction for the purpose of enforcing the settlement agreement. However, this action was insufficient to render the plaintiffs as prevailing parties because the district court "did not order any of the parties to do or not to do anything." Rexam, Inc. v. United Steel Workers of Am., AFL-CIO-CLC, 2008 WL 583702, at * (D. Minn. Feb. 6, 2008)(citing Christina A., 315 F.3d at 991).

Here, like in Christina A., the Court order dismissing the case does not direct either of the parties to do or not to do anything. In fact, the Court's order dismissing the case does not state that it retains jurisdiction in order to enforce any settlement agreement or grant any injunctive relief to the Plaintiff. (Docket No. 129). Instead, it simply states that the since Plaintiffs voluntarily dismissed the case, such a "dismissal is effective without court order pursuant to Federal Rule 41." Id. The stipulation upon which the Court's order is based also does not contemplate any further action by the Defendants and merely notes that Plaintiff will dismiss their case voluntarily and seek attorneys fees in the future. (Docket No. 127). Thus, there has

been no court order creating a "material alteration of the legal relationship of the parties to the lawsuit." Buckhannon, 532 U.S. at 604-05; see also Oil, Chemical and Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 458 (D.C. Cir. 2002) (superseded by statute on other grounds) (holding that a stipulation of dismissal pursuant to 41(a)(1)(A)(ii) and a consent decree is insufficient to confer "prevailing party" status because there was no judicial relief on the merits of the complaint). Rather, Defendants, FWS, made the determination to delist the WGL DPS gray wolves through independent, voluntary action as directed under the ESA and not as a result of any court order. Such a "voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Buckhannon, 432 U.S. at 605. As such, the Plaintiffs are not a "prevailing party" and cannot obtain attorneys fees under the EAJA.[6]

## III. ENDANGERED SPECIES ACT (ESA) ATTORNEYS FEES PROVISION[7]

### A. STANDARD OF REVIEW

The ESA provides that courts "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 USC § 1540(g)(4). In Ruckelshaus v. Sierra Club, 463 U.S. 680 (1983), the Supreme Court explained, when analyzing similarly worded fee-shifting provision of the Clean Air Act, that this language "was meant to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties-parties achieving some success, even if not major

---

[6] Defendants further claim that their position in this case was substantially justified so that an award of fees is not appropriate and they go through a brief analysis of the merits of their case. See 28 U.S.C. § 2412(d)(1)(B). Defendants also argue that even if fees are awarded, the fees requested are unreasonable because the Plaintiffs seek fees for Mr. Campbell above the rate provided by the EAJA and they seek fees for uncompensable actions such as contact with the press, communications with Congress and unrelated meets and discussions. (Defs' Mem., p. 24). However, because the Court concludes that the Plaintiffs are not a "prevailing party" and therefore not entitled to attorneys fees under the EAJA, it need not reach these issues.

[7] Plaintiffs did not seek fees pursuant to the ESA in their original motion, but instead raised the issue for the first time in their reply brief.

success." Id. at 688. The Eighth Circuit applied this test to the Endangered Species Act in Sierra Club v. Clark, 755 F.2d 608, 620 (8th Cir. 1985) and found that parties must achieve "some success on the merits" to be entitled to attorneys fees.

The Eighth Circuit has not addressed whether Buckhannon has since altered the analysis of the ESA's fee provisions to prohibit recovery under a catalyst theory. However, other courts that have considered the issue have found that it has not. Ass'n of California Water Agencies v. Evans, 386 F.3d 879, 885 (9th Cir. 2004) (finding that "although Buckhannon does preclude use of the catalyst theory for suits brought under statutes provided for fee shifting for a 'prevailing party,' the decision does not preclude use of the catalyst theory for suits brought under statutes like the ESA, which allow the court to awards costs of litigation 'whenever the court determines such award is appropriate'"); Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla., 307 F.3d 1318, 1327 (11th Cir. 2002) (stating that "we hold as a matter of law that the Supreme Court's decision in Buckhannon does not prohibit use of the catalyst test as a basis for awarding attorney's fees and costs under the 'whenever . . . appropriate' fee shifting provision of the Endangered Species Act."); Ohio River Valley Envtl. Coal., Inc. v. Green Valley Coal Co., 511 F.3d 407, 413–17 (4th Cir. 2007) (awarding attorneys fees under the catalyst theory under Surface Mining Control and Reclamation Act which allows attorneys fees and costs "whenever appropriate"); Sierra Club v. EPA, 322 F.3d 718 (D.C. Cir. 2003) (allowing attorney fees under Clean Air Act § 307(f) which provides for attorneys fees "whenever . . . appropriate"); but see Ctr. for Biological Diversity v. Marina Point Dev. Co., 566 F.3d 794, 805 (9th Cir. 2009) (noting that Ruckelshaus read a "prevailing party" requirement into the ESA)); Center for Biological Diversity v. Norton, 262 F.3d 1077, 1080 n. 2 (10th Cir. 2001) (declining to resolve question whether Buckhannon undermines Ruckelshaus's dictum). However, the Court need not here

decide whether the recovery of attorneys fees under a catalyst theory is appropriate under the ESA because, as detailed below, even under a catalyst theory of attorney fees recovery, the Plaintiffs' motion fails.

The catalyst theory provides that a plaintiff can be a prevailing party in a mooted case if "his suit is a catalyst for the defendant's voluntary compliance and the defendant's compliance was not gratuitous." St. Louis Fire Fighters Ass'n v. City of St. Louis, 96 F.3d 323, 331 (8th Cir. 1996). "To determine whether a lawsuit was a catalyst which compelled a certain result, the suit must be a 'necessary and important factor in achieving the improvements,' and the result must be legally required as opposed to gratuitous or voluntary." Hendrickson v. Branstad, 934 F.2d 158, 161 (8th Cir. 1991)(citing United Handicapped Fed'n v. Andre, 622 F.3d 342, 246 (8th Cir. 1980)). "Chronological events are important in determining whether a lawsuit was a catalytic factor in prompting a defendant to take certain actions." Idaho Watersheds Project v. Jones, 253 Fed. Appx. 684, 686 (9th Cir. 2007).

   B.   DISCUSSION

Plaintiffs maintain that they were the prevailing party in this litigation because they acted as the primary catalyst who obtained the ultimate delisting of the WGL DPS gray wolves. (Pls' Reply Mem., p. 11-12). Plaintiffs claim that they were instrumental in causing the State of Minnesota to file their Petition requesting delisting and to move to become Amicus Curiae.[8] Id. Plaintiffs also claim that the filing of their petition caused other Intervenors to become involved in the lawsuit. Id.

---

[8] Plaintiffs allege they caused the Minnesota Department of Natural Resources ("DNR") to act because they submitted a copy of the lawsuit to the MN DNR and asked that they intervene. The Minnesota DNR, although an Amicus Curiae to these proceeding, has not taken the position on the record that its petition seeking the delisting of the WGL DPS gray wolves was materially in anyway a response to or caused by Plaintiffs' intentions to bring suit against the FWS.

Here, as already discussed above, the Plaintiffs have not demonstrated that they were the prevailing party under the more restrictive test of Buckhannon. Nor does the Court believe that Plaintiffs have demonstrated that they obtained "some success" on the merits of their lawsuit or that their actions were the catalyst for the final delisting rule issued on December 28, 2011.

Undoubtedly, the type of relief Plaintiffs sought generally came to pass and the gray wolf in Minnesota has been delisted. However, the action to delist the WGL DPS gray wolves was initiated and undertaken voluntarily by the Defendants prior to Plaintiffs' lawsuit, and therefore, it was not caused by Plaintiffs' lawsuit. As Defendants demonstrate, through the declaration of Laura Ragan, they began working on a new proposed rule to delist the WGL DPS gray wolf in the upper Midwest immediately after the 2009 settlement agreement was approved in Humane Soc'y v. Salazar. (Ragan Dec. ¶ 8). In fact, by mid-September 2009, the regional office had already submitted a draft of the renewed delisting rule to the Washington office for its review. Id. However, work on the draft rule was halted for a period briefly to allow FWS biologists to review the available most recent science on wolf taxonomy to be incorporated into the new rule. Id. Thus, the proposed delisting rule was already in the process of moving forward before the Plaintiffs filed their lawsuit in April 2010. Moreover, as demonstrated by the FWS's numerous other prior attempts to delist the gray wolf, the FWS has independently been vigorously attempting to delist the WGL DPS gray wolf since at least 2006; long before Plaintiffs' lawsuit was started in April 2010. The Defendants have faced roadblocks in their delisting process attempts to be sure, but they were not entirely of their own making. The road blocks to prior efforts to delist the gray wolves were instead due to numerous court challenges by others attempting to stop the delisting.

Therefore, the FWS has been all along (at least since 2006) voluntarily attempting to delist the WGL DPS gray wolf, and the Plaintiffs' present lawsuit was not a significant or important catalyzing factor in the 2011 delisting.[9] See e.g., Center for Biological Diversity v. Norton, 262 F.3d 1077, 1082-83 (10th Cir. 2001)(upholding district court decision finding that the fact that the defendant was taking action to delist the shiner under the ESA before the Plaintiff brought their lawsuit supports the notion that plaintiff was not the catalyst for the delisting).

Similarly, Plaintiffs argue that they urged Senator Amy Klobuchar and other organizations to support and advocate for their efforts to delist the WGL DPS gray wolves, a fact which they insist helped directly cause the delisting of the gray wolf. Id. at 12. Plaintiffs contend that "Plaintiff Lueck through the Minnesota Cattleman's Association was especially effective in bringing pressure to bear on Senator Klobuchar and the Minnesota congressional delegation in urging the FWS to prompt[ly] take action to delist the gray wolf and turn over management of wolves to the Minnesota DNR." Id.

However, the actions referred to by the Plaintiffs constitute potential legislative lobbying activities or constituent contact efforts rather than litigation efforts in this case. While the Court concedes that the actions taken by the Plaintiffs may possibly have influenced public officials to work behind the scenes lobbying the agency officials for the delisting of the gray wolf, these political activities were undertaken outside of this lawsuit, were not a part of this litigation, and therefore, cannot be relied upon to demonstrate that Plaintiffs' lawsuit in fact caused the FWS to

---

[9] Plaintiffs additionally argue that the Defendants improperly undertook a two year study between 2009 and 2011 before delisting the wolves which caused the delisting to take longer. (Pls' Mem., p. 16). In effect, Plaintiffs alternatively maintain that they were the catalyst forcing the Defendants to delist the wolves quicker. This study began in September 2009, well before the Plaintiffs' lawsuit. (Ragan Dec.,¶ 8). However, this study in no way terminated the delisting process already underway by the Defendants. Moreover, Plaintiffs contention that this was an improper delay is unfounded. The Defendants apparently undertook to make sufficient findings to ensure that any final rule would not be subject to legal challenge yet again by completing updated scientific findings so that their rule would be based on the then best available science as required by 16 U.S.C. § 1533(b)(1)(A).

remove the WGL DPS gray wolf from under the protection of the ESA. Attorneys fees are designed to "reward successful litigants, not success in the political process even if the political success was a response to the litigation." Statewide Reapportionment Advisory Comm. v. Beasley, 99 F.3d 134, 137 (4th Cir. 1996); see also Dabney v. Reagan, 1992 WL 350817, at *3 (S.D. N.Y. Nov. 17, 1992)(stating that "it is clear in the case at bar that the catalyst affecting defendants' conduct was legislation, not litigation.").[10]

## IV.     PRO SE PLAINTIFFS CANNOT OBTAIN ATTORNEYS FEES FOR THEIR OWN EFFORTS

Although the above reasoning of the Court would necessarily dispose entirely of the Plaintiffs' motion, for the sake of completeness, the Court addresses the Defendants' alternate reason for opposing attorneys fees. Defendants argue that the Plaintiffs, as pro se litigants, are not entitled to obtain attorneys fees for the work they personally undertook on this case. The Court finds that this is an additional reason for denying Plaintiffs' motion for attorneys fees.

To begin with, both the ESA and the EAJA prohibit pro se parties from obtaining attorneys fees. Strahan v. Holmes, 686 F.Supp.2d 129, 131 (D. Mass. 2010)(pro se parties cannot obtain attorney fees under the ESA); Koortitzky v. Herman, 178 F.3d 1315, 1320-21 (D.C. Cir. 1999); see also McDermott v. Royal, 123 Fed. Appx. 241, 242 n. 3 (8th Cir. 2004) (stating that "a pro se litigant is not entitled to attorneys fees under section 1988"); White v. Armontrout, 29 F.3d 357, 361-362 (8th Cir. 1994) (stating that a litigant was not entitled to attorney's fees because of his pro se status); McMillan v. Chief Judge, Circuit Court of Greene County, 711 F.2d 108, 109 n. 2 (8th Cir. 1983) (stating "[b]ecause the plaintiffs brought this action pro se and in forma pauperis, however, they did not incur any [costs and attorney's fees]").

---

[10] See also fn.5 above.

Plaintiff Tyler argues that he has legal training, and is not a typical pro se party thus justifying the award of attorneys fees. Although Mr. Tyler attended law school, he never appeared as an attorney of record, and on at least one occasion this Court can recall Mr. Tyler representing to it that he was <u>not</u> appearing before it as a lawyer. Therefore, Mr. Tyler cannot obtain fees because of his pro se status. Moreover, even if Mr. Tyler was a practicing, licensed attorney who represented himself pro se, he still could not obtain attorneys fees. See <u>Kay v. Ehrler</u>, 499 U.S. 432 (1991)(finding that the word "attorney" in the fee-shifting provision of 42 U.S.C. § 1988 assumes an agency relationship between attorney client precluding the award of attorneys fees for work done by an attorney pro se).

Plaintiffs also seek fees for work ostensibly done on their behalf by an attorney, William Campbell. Mr. Campbell is not listed as counsel of record, and has never formally made an appearance in his Court upon a representation that he was serving as legal counsel in this case for either Plaintiff. However, Plaintiffs allege he provided pro bono services to them and also served as a sort of consultant to the Plaintiffs.

As discussed above, attorneys fees "assume an agency relationship" and the purpose of fee shifting statutes granting attorney fees to litigants is to "enable potential plaintiffs to obtain the assistance of competent counsel." <u>Kay</u>, 499 U.S. at 436. Here, the Plaintiffs have not demonstrated that they had any agency relationship with Mr. Campbell. Instead, based on the record before the Court, it appears that Mr. Campbell merely acted as a consultant to the Plaintiffs and did not control the "legal strategy and presentation" of this case as required for such a relationship to exist. <u>Koortitzky</u>, 178 F.3d at 1320-21. The "letter agreement" between Plaintiffs and Mr. Campbell states that Mr. Campbell will record time and expenses "with the idea that, if and when, the case is funded I will render a bill in the usual course." (Pls' Reply,

Ex. 5). While this agreement may show that Mr. Campbell acted as a consultant for hire, it does not show that there was an attorney-client relationship or that he controlled the legal strategy and presentation of the case. Additionally, the conduct of the Plaintiffs themselves is contrary to the claim that Mr. Campbell was legal counsel for them in this case. Plaintiffs consistently represented to the Court that they were appearing pro se and gave no indication that an attorney was controlling the direction of the litigation behind the scenes. The very fact that Plaintiffs also characterize Mr. Campbell as a consultant suggests that he had no control over the strategy of the litigation.

Plaintiffs argue that whether or not Mr. Campbell appeared as counsel of record is "immaterial." (Pls' Mem., p. 6). However, the Court disagrees. Pro se Plaintiffs are regularly granted significant leeway in this court which is designed to compensate pro se litigants' lack of legal expertise. See Williams v. Carter, 10 F.3d 563, 567 (8th Cir. 1993) ("Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstanding"). However, if Plaintiffs are actually represented by an attorney behind the scenes, the court may be reading a document liberally that was actually drafted by an attorney. Allowing pro se parties to obtain legal fees for the assistance of an undeclared attorney behind the scenes raises a host of policy concerns. Such an action would provide the benefits of the court's liberal construction of pro se pleadings, while the party so benefited actually had the advice from counsel. Such an action would give the benefitted party an unfair advantage as well as potentially shield the ghost counsel from accountability for any of their actions. See Laremont-Lopez v. Southeastern Tidewater Opportunity Ctr., 968 F.Supp. 1075, 1077 (E.D.Va.1997) (finding it "improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on

behalf of litigants designated as pro se"); Duran v. Carris, 238 F.3d 1268, 1273 (10th Cir. 2001)(finding that any substantial work by an attorney on a pro se appellate brief must be disclosed); United States v. Eleven Vehicles, 966 F.Supp. 361, 367 (E.D. Pa. 1997)(refusing to award fees for counsel who later appeared as counsel of record for work completed when the party appeared pro se because "policy considerations militate against validating an arrangement wherein a party appears pro se while in reality the party is receiving legal assistance from a licensed attorney").

As such, as pro se parties, the Plaintiffs' motion for attorneys fees under both the EAJA and the ESA must be denied. [11]

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' Motion for Attorneys' Fees [Docket No. 112] be DENIED; and

2. Plaintiff's Substituted Motion to Supplement Record of Motion for Costs and Fees [Docket No. 151] is DENIED AS MOOT.


Dated: June 27, 2012                              s/Leo I. Brisbois
                                                  LEO I. BRISBOIS
                                                  United States Magistrate Judge

N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 11, 2012,** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and

---

[11] The Plaintiffs also bring a motion to supplement the record with additional exhibits outlining their attorneys fees and costs. However, in light of this report and recommendation, the Court need not consider such motion and denies it as moot.

Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.